# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**LUZ RODRIGUEZ,**

      **Plaintiff,**

**vs.**                         **Case No. 8:13-cv-01445-T-27AEP**

**THE SCHOOL BOARD OF HILLSBOROUGH
COUNTY, FLORIDA,**

      **Defendant.**

_____/

## ORDER

    **BEFORE THE COURT** is Plaintiff's Motion for Partial Summary Judgment and Incorporated Memorandum of Law in Support of Motion for Partial Summary Judgment (Dkt. 32) and Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 33). Upon consideration, Defendant's motion is **GRANTED**, and Plaintiff's motion is **DENIED**.

### *Background*

    Plaintiff, Luz Rodriguez, worked as a custodian for Kimbell Elementary School from 2008 to 2013. (Dkt. 15, First Amended Complaint, ¶ 20; Dkt. 34, Rodriguez Tr. 20). On January 9, 2013, Plaintiff met with Kimbell's principal, Sheryl Marceaux, to discuss problems Plaintiff was having with the head custodian. (Dkt. 36, Marceaux Tr. 14–19). In the course of the conversation, Plaintiff said she had previously considered suicide. (*Id.*) Principal Marceaux called the school district's security officer, who in turn contacted the Tampa Police Department. (*Id.*) Several officers responded and transported Plaintiff to a crisis center. (Rodriguez Tr. 39–44). Defendant placed Plaintiff on unpaid administrative leave and pursuant to its internal policies, referred her to a fitness for duty ("FFD") evaluation with psychiatrist Dr. Karl Jones, which occurred on January 17, 2014.

(Dkt. 35, Perez Tr. 34–43).  Dr. Jones determined that Plaintiff suffered from several disorders, including depression, and wrote that Plaintiff "is considered to be disabled at this time and may return to work within 6 months if there is a positive and appropriate response to treatment." (Dkt. 35–8).  As a result of Dr. Jones's determination, Plaintiff was placed on an extended leave of absence.  Defendant's human resources administrator, Jose Perez, assisted Plaintiff in filling out the appropriate paperwork, and Perez wrote that the leave would be "administrative" health leave rather than FMLA leave. (Perez Tr. 56–59).  Plaintiff began meeting with a therapist provided by Defendant, Ruth Martinez, who believed as of March 20, 2013 that Plaintiff could return to work. (Dkt. 39, R. Martinez Tr. 12, 15 and Ex. 2).  Plaintiff also sought treatment from a psychiatrist, Dr. Arlene Martinez, who wrote Defendant that Plaintiff could return to work as of April 17, 2013. (Dkt. 34–10).  Defendant refused to return Plaintiff to work until Dr. Jones cleared her in a follow-up FFD evaluation. (Perez Tr. 92).  Eventually, Defendant waived the requirement for a follow-up FFD and returned Plaintiff to work at a different elementary school on May 16, 2013. (Perez Tr. 94–95).

Plaintiff contends that Defendant's requirement of a FFD evaluation before she could return to work in January 2013, and its refusal to return her to work until May 2013, violated the Americans with Disabilities Act (ADA), Rehabilitation Act, and the Florida Civil Rights Act.  Plaintiff further contends that Defendant interfered with her ability to take leave and return to her former position under the Family and Medical Leave Act (FMLA).

### *Standard*

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

2

(1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiff's evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 249.

The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

### Discussion

Plaintiff brings claims of disability discrimination under the ADA, Rehabilitation Act, and Florida Civil Rights Act. All three claims are analyzed under the same standards. *Sicilia v. UPS*, 279 Fed. App'x. 936, 938 (11th Cir. 2008) (FCRA analyzed under ADA); *Sutton v. Lader*, 185 F.3d 1203, 1207 n.5 (11th Cir. 1999) ("the standard for determining liability under the Rehabilitation Act is the same as that under the ADA.") Plaintiff challenges Defendant's initial requirement of a FFD evaluation and subsequent requirement of being cleared in a FFD evaluation before Plaintiff's return to work. The parties dispute whether Plaintiff was in fact disabled, but the ADA applies whether

3

or not she was. *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1310-11 (11th Cir. 2013).

Plaintiff also brings claims pursuant to the FMLA, 29 U.S.C. § 2601 *et. seq.* Section 2615(a) sets forth prohibited acts under the FMLA and creates two distinct types of claims: interference claims and retaliation claims. 29 U.S.C. § 2615(a); *Hurlbert v. St. Mary's Health Care Sys.*, 439 F.3d 1286, 1293 (11th Cir. 2006). In an interference claim, "an employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights under the [FMLA]." *Id.* (citations omitted). In a retaliation claim, "an employee asserts that [her] employer discriminated against [her] because [she] engaged in activity protected by the [FMLA]." *Id.* (citations omitted). Plaintiff's contentions that she was improperly placed on administrative leave, was entitled to notification of her FMLA rights, and was unfairly delayed restoration to her position are interference claims. In her retaliation claim, Plaintiff contends that because she took leave, Defendant refused to timely restore her position.

### Initial Psychiatric Evaluation

An employer may require a psychological evaluation of fitness for duty if it is "job related and consistent with business necessity." *Owusu-Ansah*, 715 F.3d at 1311; *Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1999). If the employer has a "reasonable, objective concern about [Plaintiff's] mental state," a FFD evaluation is permitted. *Owusu-Ansah*, 715 F.3d at 1312. Courts recognize that "[e]mployers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims." *Cody v. CIGNA Healthcare*, 139 F.3d 595, 599 (8th Cir. 1998). "Where inquiries into the psychiatric health of an employee are job related and reflect a concern with the safety of employees, the employer may, depending on the circumstances of the particular case, require specific medical information from the employee and may require that the employee undergo a physical examination designed to determine his ability to

work." *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1291 (11th Cir. 2002) (*quoting Krocka v. City of Chicago*, 203 F.3d 507, 515 (7th Cir. 2000) (internal citation omitted)); *Watson*, 177 F.3d at 935 (". . . [T]he ADA does not, indeed cannot, require a police department to forego a fitness for duty examination to wait until a perceived threat becomes real or questionable behavior results in injuries.").

Considering the undisputed facts in this case, Defendant's concerns were objectively reasonable and Defendant was justified in requiring the initial FFD. In an emotional meeting with her principal concerning problems she was experiencing with the head custodian, Plaintiff shared that she had considered suicide in the past. Considering this, and the nature of Plaintiff's work in close proximity to young children, Defendant was justified in requiring that Plaintiff undergo a psychological examination and be deemed fit for duty before returning to work.

Courts have acknowledged that in the context of school employees, "a school board's psychological examination of an employee is both job-related and consistent with a business necessity if that employee exhibits even mild signs of paranoid or agitated behavior that causes the school administration to question the employee's ability to perform essential job duties." *Mickens v. Polk County Sch. Bd.*, 430 F. Supp. 2d 1265, 1279-80 (M.D. Fla. 2006) (internal citation omitted); *Miller v. Champaign Community Unit School District*, 983 F. Supp. 1201, 1206 (C.D. Ill. 1997)("As a matter of law a psychiatric examination is "job-related and consistent with business necessity" when an elementary school employee shows even mild signs of "schizophreniform" behavior. Because elementary school personnel deal directly with very young children, it is appropriate for principals and other school employees to require medical/psychiatric follow-up to any and all allegations of paranoia or other mental disorder").

Plaintiff's attempt to distinguish these cases is unavailing. Plaintiff cites *Brownfield v. City*

*of Yakima,* 612 F.3d 1140 (9th Cir. 2010), in which the Ninth Circuit warned against the use of medical and psychological examinations "as a pretext to harass employees or to fish for non-work-related medical issues." *Id.* at 1145. But *Brownfield* actually approvingly cites *Mickens* and *Miller,* the cases involving school employees for whom FFDs were ordered, and holds, "prophylactic psychological examinations can sometimes satisfy the business necessity standard, particularly when the employer is engaged in dangerous work." *Id.* at 1146. All that is required is that the employer have an objective basis for requiring a FFD, considering the nature of the job in question. *Id.* at 1147; *see Wisbey v. City of Lincoln,* 612 F.3d 667 (8th Cir. 2010); *Coffman v. Indianapolis Fire Dep't,* 579 F.3d 559, 567 (7th Cir. 2009). Here, Defendant had a reasonable, objective concern about Plaintiff's mental state, and was therefore justified in requiring the FFD, considering Plaintiff's comment about suicide and the nature of her job responsibilities.

### Subsequent Evaluations and Return to Work

Plaintiff also challenges Defendant's refusal to return her to work until May 16, 2013. Dr. Jones, who conducted the FFD, found that Plaintiff was not fit for duty on January 17, 2013. In April 2013, Dr. Arlene Martinez, one of Plaintiff's treatment providers, reported to Defendant that Plaintiff was ready to return to work. Before returning Plaintiff to work, Defendant requested that Plaintiff submit to a follow-up FFD evaluation with Dr. Jones. Although the follow-up FFD never occurred, Defendant permitted her to return to work on May 16, 2013, based on authorization from Dr. Arlene Martinez and Plaintiff's therapist, Ruth Martinez.

Plaintiff's complaints about the process subsequent to the FFD are meritless. Defendant's requirement that Dr. Jones, who conducted the first FFD evaluation, re-evaluate Plaintiff before her return to work was reasonable.[1] Employers may require a medical evaluation to assess an

---

[1] Defendant's decision to eventually waive the FFD by Dr. Jones does not affect the reasonableness of the requirement.

employee's fitness to return to work after a health-related absence. *See Dockens v. Dekalb County Sch. Sys.,* 441 Fed. App'x 704, 708-709 (11th Cir. 2011) (school board's requirement that employee who took FMLA leave because of an anxiety disorder complete a FFD evaluation before returning to work was "legitimate [and] non-discriminatory," and school board was permitted to reject a doctor's note alone as insufficient.) *See also Lyons v. Miami-Dade County,* 791 F. Supp. 2d 1221, 1228 (S.D. Fla. 2011) (employer's requirement that employee returning after medical leave undergo medical exam and provide five years of medical history reasonable so that employer can determine "whether [plaintiff] was able to perform her job-related functions.").

## FMLA Interference Claims

Plaintiff also contends that Defendant interfered with her FMLA rights based on several theories: placing her on administrative leave rather than FMLA leave, failing to timely return her to work, failing to provide her with notice of her eligibility for FMLA leave (29 C.F.R. § 825.300(a-b, d)) and her rights and responsibilities under the FMLA (29 C.F.R. § 825.300(c)), and terminating her health insurance coverage. To state a FMLA interference claim, Plaintiff must show she was entitled to a benefit under the FMLA, and that she was denied that benefit. *See Strickland v. Water Works & Sewer Bd.,* 239 F.3d 1199, 1206-1207 (11th Cir. 2001). Plaintiff's interference claims will be considered in turn.

A FMLA interference claim based solely on her leave status requires Plaintiff to show that she was denied benefits because she was not on FMLA leave. *See Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1284 (11th Cir. 1999) (employee erroneously told she did not qualify for FMLA but who nevertheless was given equivalent leave did not suffer damages). For two reasons, Plaintiff is unable to show she was denied benefits to which she was otherwise entitled because she was not placed on FMLA leave. First, as in *Graham,* the administrative health leave she was placed on was

more generous than FMLA leave (administrative leave was available for a longer period than FMLA leave), and therefore she suffered no damages based on her leave status. Perez Tr. 56–58; Dkt. 35–1, Collins Tr. 154–156. Second, as discussed *infra*, there was no FMLA benefit to which she was entitled that she did not receive. *See Drago v. Jenne*, 453 F.3d 1301, 1306 (11th Cir. 2006) (granting employer summary judgment on FMLA interference claim because employee "was not denied any benefit guaranteed him by the FMLA.").

Plaintiff's claim of FMLA interference based on Defendant's failure to return her to work more promptly cannot survive for the same reason her ADA claim regarding the requirement that she submit to a FFD evaluation before returning to work fails. An employee returning to work after FMLA leave has a right to restoration of her position, but "[a]n employer may delay restoration to employment until an employee submits a required fitness-for-duty certification." 29 C.F.R. § 825.312(e). *See also* 29 C.F.R. § 825.216(c) ("If the employee is unable to perform an essential function of the position because of a . . . mental condition . . . the employee has no right to restoration."). As noted, Defendant's requirement of a FFD evaluation before restoration was reasonable, job-related, and consistent with business necessity, and there is no dispute that Plaintiff's return to work was conditioned on the follow-up FFD (although it was eventually waived). Dkt. 32 at 9. Accordingly, there was no interference with Plaintiff's right to restoration. *See Drago*, 453 F.3d at 1306-1307 (11th Cir. 2006) (granting summary judgment on FMLA interference claim where employee refused to return employee to work until medical authorization was provided).

Plaintiff also claims she did not receive the required specific and general notices under the FMLA of her rights to FMLA leave (29 C.F.R. § 825.300(a-d)), and the FMLA notice of Defendant's intent to require a FFD evaluation before returning her to work (29 C.F.R. § 825.312(d)). Viewing the evidence in the light most favorable to Plaintiff, Defendant did not comply

with the notice requirements of the FMLA. However, failure to comply with the procedural requirements of the FMLA is not actionable "in the absence of damages." *Graham*, 193 F.3d 1274, 1284 (11th Cir. 1999).

There is no dispute that Plaintiff was on notice that she was on administrative health leave, Dkt. 32 at 7, and that she knew she needed medical clearance to return to work. *Id.* As Plaintiff was on notice of the relevant requirements of her leave and restoration to work, Defendant's failure to provide the notice contemplated by the regulations did not cause Plaintiff damages. *Graham*, 193 F.3d at 1284 (employee suffered no damages when she was wrongly told she did not qualify for FMLA but was nonetheless given equivalent leave); *see Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 91 (2002) (to state a FMLA interference claim, employees have "the burden of proving [] real impairment of their rights and resulting prejudice.").

Plaintiff's final interference claim is that her health insurance was interrupted while she was on leave, but there is no dispute that Defendant immediately reinstated her insurance and provided her retroactive benefits. Dkt. 37-1 at 24. Because Plaintiff has failed to allege there were any damages as a result of the interruption of insurance, the insurance allegations are not a cognizable interference claim. *Drago*, 453 F.3d at 1306.

### FMLA Retaliation Claim

Plaintiff's final claim is for retaliation under the FMLA, which requires her to show that she engaged in statutorily protected conduct, suffered an adverse employment decision, and that the decision was casually connected to the protected conduct. *Martin v. Brevard County Public Schools*, 543 F.3d 1261, 1268 (11th Cir. 2008). Plaintiff appears to claim the protected conduct was taking medical leave and the adverse employment decision was the requirement of submitting to the FFD evaluations. Even if Plaintiff could establish a prima facie case of retaliation, the record

demonstrates that Defendant had a "legitimate reason for the adverse action." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). Its concern about the Plaintiff's mental health and her job related responsibilities constitute legitimate reasons for requiring the initial and follow-up FFDs. After an employer provides a legitimate reason for its decision, the burden shifts to the employee to show that the decision was pretextual. *Id.* at 1298. Plaintiff provides no evidence creating a genuine dispute of material fact as to whether the initial or follow-up FFD was pretextual. Her retaliation claim therefore fails.

Accordingly, Defendant's Motion for Summary Judgment (Dkt. 33) is **GRANTED**. Plaintiff's Motion for Partial Summary Judgment (Dkt. 32) is **DENIED**. The Clerk is directed to enter judgment in favor of Defendant and close this case.

**DONE AND ORDERED** this ____9ᵗʰ____ day of October, 2014.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record